Argued and submitted September 26, reversed December 14, 1983

In the Matter of the Compensation
of Kenneth E. Gulick, Claimant.

GULICK,
*Petitioner,*

*v.*

CHAMPION INTERNATIONAL,
*Respondent.*

(WCB No. 81-10359; CA A27325)

672 P2d 1382

Quintin B. Estell, Salem, argued the cause for petitioner. On the brief was Emmons, Kyle, Kropp, Kryger & Alexander, Salem.

Keith D. Skelton, Portland, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

.

## ROSSMAN, J.

Claimant appeals an order of the Workers' Compensation Board which held that he is not permanently and totally disabled. We reverse.

Claimant is a 52-year-old man with an eighth grade education and work experience limited to heavy labor. He initially sustained an industrial injury on November 20, 1975, when he stepped off a forklift, slipped and hurt his back. He was released for modified work on December 1, 1975. He sustained a second injury while working for the same employer on May 18, 1976, when he slipped on a piece of sap board and pulled his hip. In June, 1977, he had surgery to his back as a result of the latter accident. Employer referred him to rehabilitation counselor Huddon, who, on November 20, 1979, noted that claimant was cooperative, but has only an eighth-grade education, experience only in heavy labor and no transferable skills. Huddon stated:

> "The most important factor in this individual's inability to hold a job down, is his physical complaints. * * *

> "It is felt that voluntary retirement due to the inability to have this individual profit from the rehabilitation process is certainly in his best interest. This is agreed upon by [claimant], therefore it is this Consultant's opinion and feeling that the vocational rehabilitation process be considered not in this individual's best interest, and therefore I will be closing his case with that idea in mind."

On February 1, 1980, claimant underwent a decompression laminectomy. Thereafter, his condition continued to deteriorate. On April 9, 1981, Dr. Padel recommended treatment at a pain clinic, stating: "* * * It is to the point now where it would appear on the surface that he is near wheelchair material." After claimant had attended the pain clinic, Padel noted a dramatic improvement in his condition, reporting that he walked five miles a day and was not using a back support. Claimant was taking only Tylenol, was losing weight and was cheerful and determined. In spite of that improvement, Dr. Seres, on discharge from the pain clinic, reported that claimant had a significant disability in his low back. However, Padel continued to be optimistic until September, 1981, when claimant's right leg collapsed twice on him

and his condition again deteriorated. He reported on September 29, 1981, that claimant's condition following the two falls was such that "* * * I do not see the patient rehabilitated into any form of gainful employment. For all practical purposes his disability is permanent and total." On December 15, 1981, claimant was getting out of a car when his right leg again collapsed. He fell across a curb and rolled part way down a hill. His condition further deteriorated, and as a result of that fall he returned to the back brace and cane. Padel's reports, up to the date of the hearing, state that claimant's right leg continued to go out on him periodically and was constantly cold and numb.

The referee awarded claimant 80 percent unscheduled disability. The Board affirmed, holding that claimant had failed to meet his burden of proving that he had unsuccessfully sought employment pursuant to ORS 656.206(3) and therefore had not established that he is permanently and totally disabled.

We hold that claimant has established by a preponderance of the medical evidence that he is permanently and totally disabled. Employer has presented no medical reports which dispute Padel's conclusion of September, 1981, that claimant's disability is permanent and total. Further, we are satisfied that claimant has met his burden of proving that it would be futile for him to attempt to find work, and he is therefore relieved of the requirements of ORS 656.206(3).

As early as November, 1979, employer's own rehabilitation counselor stated that the primary reason claimant was unable to return to work was his physical disability. The counselor specifically advised claimant that he should seek voluntary retirement, because he would not profit from the rehabilitation process. Thereafter, claimant demonstrated his motivation by attending the pain clinic and achieving what his treating physician termed a dramatic improvement in his condition. He stopped the use of all medication except nonprescription Tylenol, quit using his cane or back brace and began to walk five miles a day. He continued to be cheerful and positive in his attitude until he underwent a series of falls due to his right leg collapsing underneath him, a situation which was clearly caused by his back injury. After the first two apparently less serious falls, Padel evaluated claimant and

stated that, for all practical purposes, his disability was permanent and total. Thereafter, claimant sustained an additional fall which significantly increased his back disability and required him to go back to using a back brace and a cane. As noted by board member Lewis, who dissented in this case:

"Claimant's medical history has been characterized by startling recoveries and disappointing setbacks. Whenever claimant makes substantial progress as a result of treatment, including participation in pain clinic programs, eventually his leg buckles, resulting in a fall which disables him again. * * *"

We agree with that evaluation of this case and find claimant to be permanently and totally disabled as of September 29, 1981, the date of Padel's report.

Reversed; claimant awarded permanent total disability as of September 29, 1981.